James T. BRYAN, Jr., et al.

v.

Katherine Byrd BREYER.

Supreme Judicial Court of Maine.

Argued Sept. 5, 1995.
Decided Oct. 13, 1995.

Anthony J. Giunta (orally), Ellsworth, for plaintiff.

George D. Guzzi (orally), Guzzi and Walker, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Katherine Breyer appeals from a judgment entered in the Superior Court (Hancock County, *Mead, J.*) granting reformation of a purchase-and-sale agreement and the accompanying deed on the ground of a mutual mistake. Although both parties labored under a material mistake of fact at the time the agreement was executed, we vacate the judgment because there was no mutual mistake as of the date of the delivery of the deed.

Admiral Richard Byrd owned a substantial amount of land surrounding Tunk Lake in Sullivan. On his death in 1957, the Admiral devised the land to his wife, Marie Byrd. In 1958, Marie acquired another lot on Tunk Lake, the "McCarthy lot," which consisted of 5.33 acres. In 1986, James Bryan, Jr. entered into a written agreement with five of Marie's heirs,[1] among whom was Breyer, for the sale of the Tunk Lake property. The agreement described all of the land inherited by Marie from the Admiral. At the time the parties entered into this agreement, they all assumed that the McCarthy lot was included, but the land described in the agreement did not include the McCarthy lot.

Sometime after the agreement was signed but before the closing, the parties' real estate attorney discovered that the McCarthy lot was not included as part of the legal description of the land in the agreement. The attorney drafted a new release deed for Breyer to sign, but she refused and instead made an offer to sell her interest in the separate McCarthy lot to the Bryans. The Bryans did not respond to this offer and proceeded with the closing of the Tunk Lake property. The deed delivered to the Bryans at the closing did not describe the McCarthy lot.

In the years following the closing, the Bryans obtained from four of Marie's heirs, for various additional consideration, a three-quarters interest in the McCarthy lot. Katherine Breyer, the fifth of Marie's heirs, owned the remaining one-quarter interest in the lot. In 1992, seeking title to the remaining one-quarter interest, the Bryans filed suit against Breyer to reform the contract and the deed on the ground of mutual mistake. The trial court found that at the time the agreement was prepared both parties mistakenly believed that the McCarthy lot was included. Pursuant to that determination, the court reformed the deed to include the McCarthy lot.

On appeal, Breyer contends that the court erred in basing its decision that reformation was proper because the parties were mistaken about the McCarthy lot at the time they executed the agreement. We agree with Breyer's contention that the appropriate inquiry is whether the parties were mistaken

1. The date of Marie's death is unclear in the record.

at the time of the closing when the deed was delivered to the Bryans.

 "The doctrine of merger by deed provides that once a . . . deed is accepted it becomes the final statement of the agreement between the parties and nullifies all provisions of the purchase-and-sale agreement." *Haronian v. Quattrocchi*, 653 A.2d 729, 730 (R.I.1995) (internal quotations omitted). *See also* 26 C.J.S. Deeds § 91 (1956); *but cf. Wimmer v. Down East Properties, Inc.*, 406 A.2d 88, 90 (Me.1979) (provisions of purchase-and-sale agreement relating to water system and defendant's undertaking to construct a house were collateral to conveyance of premises and not merged in deed). Once the parties have delivered a deed at closing, the mutual mistake inquiry must necessarily be based on the parties' knowledge when the deed was delivered, not when the contract was signed. *See, e.g., Lietz v. Berry*, 543 A.2d 367, 368 (Me.1988). Although the Bryans might have prevailed in an action to reform the contract before the deed was delivered, they lost this possible entitlement once they proceeded with the conveyance with knowledge of the existence of the separate McCarthy lot.

 A mutual mistake is one "reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument." Horton & McGehee, *Maine Civil Remedies* § 14.16 at 14–19, 20 (1994) (citing *Tarbox v. Tarbox*, 111 Me. 374, 380–81, 89 A. 194 (1914)). A party seeking to reform a

written deed must prove mutual mistake of fact by clear and convincing evidence. *Lietz*, 543 A.2d at 368. We review the trial court's finding of mutual mistake to determine "if the factfinder reasonably could have been persuaded that [a mutual mistake at the time the deed was delivered] was . . . proved to be highly probable." *Id.* at 368 n. 2, (citing *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 153 (Me.1984)).

 Breyer testified at trial that, as of the date of the closing, she understood that the McCarthy lot was not included in the deed description. There was no evidence that contradicted that testimony. Further, the Bryans conceded at oral argument that, as of the closing of this transaction, all of the parties were aware that the lot was not included. Because there was no real misunderstanding about the effect of the deed as of the time of its delivery, the remedy of reformation was improperly granted.

The entry is:

Judgment vacated. Remanded for entry of judgment for the defendant.

All concurring.