462 B.R. 268 (2011)
Sara Marie TRASK, d/b/a Marsh River Steel, a/k/a Sara M. Goss, a/k/a Sarea Goss, a/k/a Sarah Trask, and Douglas Todd Trask, d/b/a Marsh River Steel, Debtors.
Pasquale Perrino, Chapter 7 Trustee, Plaintiff-Appellee.
v.
BAC Home Loans Servicing, LP, Defendant-Appellant.
BAP No. EB 11-043. Bankruptcy No. 09-11698-LHK. Adversary No. 10-01005-LHK.
United States Bankruptcy Appellate Panel of the First Circuit.
December 15, 2011.
*271 Victor Shapiro, Esq., on brief for Defendant-Appellant.
Pasquale J. Perrino, Jr., Esq., on brief for Plaintiff-Appellee.
Before HILLMAN, BOROFF, and CABÁN, United States Bankruptcy Appellate Panel Judges.
BOROFF, Bankruptcy Judge.
BAC Home Loans Servicing, LP ("BAC")[1] appeals from a judgment of the United States Bankruptcy Court for the District of Maine in favor of Pasquale Perrino, chapter 7 trustee (the "Trustee"), and against BAC as to their competing interests in certain real estate. BAC asserts an equitable interest in the subject real property arising from a mutual mistake (among BAC's predecessor in interest and the Debtors, defined below) when the correct property description in a prepetition mortgage now held by BAC was omitted. The bankruptcy court concluded that the Trustee, given the status of a hypothetical lien creditor by § 544(a) of the Bankruptcy Code,[2] was an intervening party with an interest superior to the equitable claims of BAC. For the reasons set forth below, we agree and AFFIRM.

BACKGROUND

A. Stipulated Facts[3]
Sara and Douglas Trask (the "Debtors") are record owners of an unimproved sixteen-acre lot in a subdivision in Winterport, Maine, known as "Lot # 6, James R. *272 Greene Subdivision, Map File 10, Page 224" ("Lot #6"). They are also record owners of an abutting 1.74-acre lot on which their residence is located (the "House").
In April 2007, the Debtors refinanced their first mortgage on the House ("Old Mortgage") with Home Loan Center, Inc. ("Home Loan"). By the refinancing, the previous mortgage loan was paid and the Old Mortgage was discharged. In one of two mortgage loans related to the refinancing,[4] the Debtors executed and delivered to Home Loan a promissory note in the amount of $195,000.00. To secure the new note, the Debtors executed and delivered, inter alia, a mortgage (the "New Mortgage") to Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Home Loan. The promissory note and the New Mortgage were subsequently assigned to BAC.
Although the Old Mortgage described the intended collateral as the House, the New Mortgage erroneously employed the description for Lot # 6. It is undisputed that both the Debtors and BAC's predecessor, Home Loan, intended the mortgaged property to be the House. The error was not discovered until shortly before the filing of the bankruptcy case in the spring of 2009.

B. Bankruptcy Proceedings
The Debtors filed a chapter 7 petition on December 14, 2009. In March 2010, the Debtors commenced an adversary proceeding to determine the extent and validity of BAC's security interest in the House in light of the erroneous property description in the New Mortgage; the trustee later joined in the complaint. In its answer, BAC asserted several counterclaims, including equitable reformation and equitable subrogation. Thereafter, the parties filed a stipulated factual record and separate briefs setting forth their respective legal positions.
After hearings on March 31, 2011, and June 2, 2011,[5] the bankruptcy court issued a bench decision opining that the Trustee, having been given the status of a lien creditor under § 544(a), was an intervening party with an interest superior to the equitable claims of BAC. The bankruptcy court issued an order and a separate judgment consistent with its decision. This appeal followed.

JURISDICTION
Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to *273 do but execute the judgment," id. at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." Id. (quoting In re American Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir.1985)). The Panel has jurisdiction over the bankruptcy court's final judgment in favor of the Trustee and against BAC as to their competing interests in the House.

STANDARD OF REVIEW
Appellate courts apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law. See Lessard v. Wilton-Lyndeborough Coop. School Dist., 592 F.3d 267, 269 (1st Cir. 2010). As there are no material facts in dispute, the Panel's review is de novo.

DISCUSSION

I. Equitable Reformation
BAC argues that the bankruptcy court erred as a matter of law in determining that, because the Trustee was an intervening party, the New Mortgage should not be equitably reformed to express the intended agreement of the parties that the House be the mortgaged property.

A. The Power to Reform
Bankruptcy courts are courts of equity. Katchen v. Landy, 382 U.S. 323, 336, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Thinking Machs. Corp. v. Mellon Finan. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1028 (1st Cir.1995). Accordingly, they have the power to reform written instruments, including deeds and mortgages, under applicable state law to effectuate the intent of the parties.[6] Even as a court of equity, however, the bankruptcy court's discretion is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code. See In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820, 830-31 (1st Cir. 1990).
Although the Trustee's status is crafted by federal law, the effect of those rights against other parties claiming a competing interest is determined by applicable state law. See Soto-Rios v. Banco Popular de Puerto Rico (In re Soto-Rios), No. 10-2270, 2011 WL 5865656 (1st Cir. Nov. 23, 2011); see also Abboud v. Ground Round, Inc. (In re Ground Round, Inc.), 482 F.3d 15, 20 (1st Cir.2007); Maine Nat'l Bank v. Morse (In re Morse), 30 B.R. 52, 54 (1st Cir. BAP 1983). Section 544(a) does not give the Trustee any greater rights than he, or any person, would have as a bona fide purchaser or judicial lien creditor under applicable state law. Morse, 30 B.R. at 54. For example, the Trustee's rights do not override state recording statutes or permit avoidance of any interest of which a trustee would have had constructive notice under state law. Thus, although a trustee's actual knowledge will not preclude bona fide status, constructive notice, as determined by state law, will "defeat the Trustee's rights under § 544(a)(3) just as such notice would defeat the rights of any bona fide purchaser of real property." Lawrence P. King, Collier Bankruptcy Manual ¶ 544.02, at 544-11, 12 (3d ed. 1996).
Under Maine law, a deed or mortgage may be reformed in equity if the *274 petitioner shows a mutual mistake of fact. See In re Pribish, 25 B.R. 403 (Bankr. D.Me.1982) (citing Williams v. Libby, 118 Me. 80, 105 A. 855 (1919)); see also Baillargeon v. Estate of Daigle, 8 A.3d 709, 714 (Me.2010); Dumais v. Gagnon, 433 A.2d 730, 735 (Me.1981). It is well settled, however, that the Maine courts will not exercise their power to reform documents if the result will prejudice third parties or if the rights of third parties have intervened. Putterbaugh v. Robinson (In re Robinson), 38 B.R. 255 (Bankr.D.Me.1984) (citing Williams, 105 A. at 857; In re Morse, 30 B.R. at 56; In re Pribish, supra).

B. Intervening Third Party

1. Section 544(a)
As of the date of case commencement, the Trustee held all of the rights and powers of a judicial lien holder and/or hypothetical bona fide purchaser with respect to all of the Debtors' property. See 11 U.S.C. § 544(a).[7] Thus, pursuant to § 544(a), the Trustee may subordinate BAC's secured claim to the Debtors' estate if, under applicable state law, a hypothetical lien holder would have prevailed over the claim as of the date of the bankruptcy case filing. Clark v. Kahn (In re Dlott), 43 B.R. 789, 792-93 (Bankr.D.Mass.1983). Bankruptcy court decisions denying motions to reform deeds or mortgages based on a chapter 7 trustee's status as an intervening lienholder or bona fide purchaser under § 544(a) are legion. See, e.g., Tomsic v. Beaulac (In re Beaulac), 298 B.R. 31 (Bankr.D.Mass.2003) (no reformation of mortgage where rights of intervening lienholders, such as trustees, would be prejudiced); Northeastern Bank of Pa. v. Clark (In re White Beauty View, Inc.), 81 B.R. 290 (Bankr.M.D.Pa.1988); Chase Manhattan Bank, N.A. v. Edmondson (In re Cunningham), 48 B.R. 509 (Bankr.M.D.Tenn. 1985); First Nat'l Bank of Poplar Bluff v. R & J Constr. Co., Inc. (In re R & J Constr. Co., Inc.), 43 B.R. 29 (Bankr. E.D.Mo.1984); In re Dlott, 43 B.R. at 793-94; In re Robinson, 38 B.R. at 257; In re Pribish, 25 B.R. at 404; Mountain Empire Bank v. Lancaster (In re Hunt), 18 B.R. 504 (Bankr.E.D.Tenn.1982). Indeed, it is difficult to identify a purpose for § 544(a) other than to achieve the result of which BAC complains. BAC argues, however, that the facts here provide a distinguishing factor: that is, matters of record giving even an intervening lien creditor or bona fide purchaser constructive notice of BAC's competing interest. This is the crux of BAC's argument; it contends that even the holder of an intervening interest would have had constructive notice of BAC's mortgage.

*275 2. Notice
Generally, there are two kinds of notice: actual and constructive. The First Circuit explained in detail the different kinds of notice in Stern v. Continental Assurance Co. (In re Ryan), 851 F.2d 502 (1st Cir.1988).
It would seem that one might properly be said to have actual notice when he has information in regard to a fact, or information as to circumstances an investigation of which would lead him to information of such fact, while he might be said to have constructive notice when he is charged with notice by a statute or rule of law, irrespective of any information which he might have, actual notice thus involving a mental operation on the person sought to be charged, and constructive notice being independent of any mental operation on his part. . . . Constructive notice is an essential element of the land recording system: if a deed is properly recorded, all future purchasers have constructive knowledge of the deed.
Id. at 507 (citations omitted).
Under Maine law, an unrecorded conveyance of real estate is not effective "against any person except the grantor, his heirs and devisees, and persons having actual notice thereof . . ." Me.Rev.Stat. Ann. tit. 33, § 201 (emphasis added). In this regard, "actual notice":
necessarily involves the rule that a purchaser before buying should clear up the doubts which apparently hang upon the title, by making due inquiry and investigation. If a party has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries, and he avoids the inquiry, he is chargeable with the notice of the facts which by ordinary diligence he would have ascertained. He has no right to shut his eyes against the light before him. He does a wrong not to heed the "signs and signals" seen by him. It may be well concluded that he is avoiding notice of that which he in reality believes or knows. Actual notice of facts which, to the mind of a prudent man, indicate noticeis proof of notice.
In re Morse, 30 B.R. at 55 (citing Maine cases). In Kobritz v. Severance, 912 A.2d 1237 (Me.2007), the Supreme Judicial Court of Maine stated:
While a creditor is not required to periodically search the registry of deeds "if no circumstance has transpired which should put him on inquiry," a creditor is required to exercise due diligence. If there are facts that would alert a creditor to inquire about the property, then the creditor must do so, and if a reasonable inquiry would have led to the discovery of the fraud, the creditor is charged with notice of the fraud. We have said that "[o]ne who has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries is chargeable with notice of the facts which by ordinary diligence he would have ascertained."
Id. at 1242 (citations omitted).
BAC maintains that inquiry notice is the same as actual notice for purpose of the Maine statute, and the Trustee should be held to have inquiry notice in this case.[8] According to BAC, *276 although the Old Mortgage included the property description for the House and the New Mortgage contained a property description for Lot # 6, both mortgages described the mortgaged property as located at 51 Stream Road, Winterport, Maine, which BAC claims is the street address for the House. BAC contends that because the mortgages used a common street address but provided different property descriptions, any potential buyer would have been placed on inquiry notice of an irregularity in title, and an inquiry would have quickly revealed the error.
The Trustee counters that reference to a street address in the body of a mortgage deed is irrelevant under Maine title law and would not place a purchaser on constructive or actual inquiry notice of a title problem that a reasonable person would investigate further. According to the Trustee, under Maine law, title is based upon the legal description of the parcel to be encumbered and street addresses are irrelevant to Maine title practice. "[A] description of land to be conveyed should be clear enough for a person who reads it to draw a sketch of it, either by the wording of the deed itself or by reference to the lot on a recorded plan . . ." Caspar F. Cowan and J. Gordon Scannell, Jr., Maine Real Estate Law and Practice, § 7.1 (2d ed. 2007). Furthermore, "[t]o convey a piece of real estate, the description should identify that piece and no other." Id. The Trustee also notes that there is nothing in the appellate record establishing that both mortgages employed the same street address.
We believe that the Trustee has the better of the argument for two distinct reasons. First, we conclude that the use of the same street address to describe two abutting parcels would not be sufficient to constitute inquiry notice. There was nothing in the New Mortgage that would have directed a judicial lien creditor or bona fide purchaser to any inquiry. What appeared of record was a description of property to which a street address was assigned. Street addresses are provided by local government, not title examiners, and may very well be combined for separate but adjoining parcels. And one of those parcels may be encumbered without changing the street address of the others. Consequently, it would not necessarily be apparent to a diligent title searcher that because the property description of Lot #6 used the same street address as the House, that description was in any way suspect.
Second, and here more important, there is nothing in the record that supports BAC's assertion that the Old Mortgage and the New Mortgage do, in fact, contain the same street address. Neither party included in the record copies of the Old Mortgage to demonstrate that the street address was the same as the New Mortgage, and the parties did not stipulate to any facts from which the trial court (or we) could rely in reaching that conclusion.[9] Accordingly, the fact on which BAC would have us base a conclusion as to inquiry notice has not been properly put before us by BAC. See Torres Martinez v. Arce (In re Torres Martinez), 397 B.R. 158, 166-67 (1st Cir. BAP 2008) ("The responsibility *277 for voids in the appellate record must reside with the party whose claim of error depends for its support upon any portion of the record of the proceedings below which was omitted."); see also Campos-Orrego v. Rivera, 175 F.3d 89, 93 (1st Cir.1999) (parties seeking appellate review "must furnish the court with the raw materials necessary to the due performance of the appellate task"); In re Abijoe Realty Corp., 943 F.2d 121, 123 n. 1 (1st Cir.1991) (explaining that court would only evaluate the claims of error to extent permitted by limited record on appeal); Cambio v. Mattera (In re Cambio), 353 B.R. 30, 36 (1st Cir. BAP 2004) (citing Gowan v. United States, 148 F.3d 1182, 1192 (10th Cir. 1998) (when appellate record fails to include copies of the documents necessary to decide an issue on appeal, bankruptcy appellate panel is unable to rule on that issue)).

II. Equitable Subrogation
BAC also argues that the bankruptcy court erred as a matter of law in finding that the Trustee, as a lien creditor under § 544(a), holds a superior interest to an equitable subrogation interest claimed by BAC. According to BAC, when its predecessor extended a loan to the Debtors to pay off the Old Mortgage, it became the holder of the rights and remedies under that mortgage by subrogation with priority above all other interests.
The traditional doctrine of equitable subrogation "enables `[o]ne who pays, otherwise than as a volunteer, an obligation for which another is primarily liable,' to be `given by equity the protection of any lien or other security for the payment of the debt to the creditor,' and to `enforce such security against the principal debtor or collect the obligation from him.'" See Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel), 594 F.3d 1073, 1079 (9th Cir.2010) (quoting McClintock on Equity 332 (2d ed.1948)). The Supreme Judicial Court of Maine has stated that equitable subrogation is "a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." Nappi v. Nappi Distribs., 691 A.2d 1198 (Me.1997) (quoting United Carolina Bank v. Beesley, 663 A.2d 574, 576 (Me.1995)). It is "a concept derived from principles of restitution and unjust enrichment." Id. (citing North East Ins. Co. v. Concord Gen. Mut. Ins. Co., 433 A.2d 715, 719 (Me.1981)). Under the doctrine, when one, not a volunteer, loans money to another and takes a mortgage to discharge a first mortgage, it may be proper to apply the doctrine and to subrogate the lender to the discharged mortgage. Beesley, 663 A.2d at 576; Federal Land Bank of Springfield v. Smith, 129 Me. 233, 151 A. 420 (1930). The doctrine requires that the equities of the parties be weighed and balanced. Beesley, 663 A.2d at 576. "Subrogation, itself a creature of equity, must be enforced with due regard for the rights, legal or equitable, of others. It should not be invoked so as to work injustice, or defeat a legal right, or to overthrow a superior or perhaps equal equity, or to displace an intervening right or title." Id.; see also Federal Land Bank, 151 A. at 422.
We are able to treat with dispatch BAC's reliance on the doctrine of equitable subrogation. As set forth above, the doctrine of equitable subrogation applies only when the party seeking to rely on the doctrine makes payment other than as a volunteer. BAC's predecessor may not have intended to take the wrong property as collateral, but it surely intended to make the instant loan and take the instant mortgage for security. It did so voluntarily. Accordingly, the doctrine of equitable subrogation is here inapplicable.

*278 CONCLUSION

For the reasons set forth above, the Judgment of the United States Bankruptcy Court for the District of Maine is AFFIRMED.
NOTES
[1] Although BAC participated in the adversary proceeding and filed the notice of appeal, Bank of America, N.A. filed the appellant's brief, claiming that it is successor by merger of BAC. As all of the relevant documents refer to BAC, and nothing was filed with the Panel requesting a substitution of parties, we continue to refer to the appellant as BAC.
[2] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109-8, 119 Stat. 23, 11 U.S.C. §§ 101, et seq.
[3] The matter was submitted to the bankruptcy court upon a Statement of Stipulated Facts.
[4] As part of the refinancing, the Debtors provided Home Loan with a second note in the amount of $25,450.00, payment of which was secured with a second mortgage having the same infirmity as the first. The second note and mortgage were not assigned to BAC and therefore are not at issue in this appeal.
[5] At a status conference immediately before the hearing, the parties agreed that BAC's equitable claim was valid as against the Debtors and that the Debtors were no longer asserting an exemption in their residence. As a result, the sole dispute at trial was between the trustee as an intervening lien creditor under § 544(a) and BAC as the holder of an equitable claim.
[6] See generally In re Bailey, 999 F.2d 237 (7th Cir. 1993) (mortgage); American Employers Ins. Co. v. St. Paul Fire & Marine Ins. Co., Ltd., 594 F.2d 973, 977 (4th Cir.1979) (insurance policy); Wells Fargo Home Mortg. v. Leach (In re Leach), Civil No. 10-449, 2010 WL 3038794, 2010 U.S. Dist. LEXIS 77234 (W.D.Pa. Jul. 20, 2010) (mortgage); United Virginia Bank v. Cleveland (In re Cleveland), 53 B.R. 814, 817 (Bankr.E.D.Va.1985) (deed).
[7] Section 544(a) provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
11 U.S.C. § 544(a).
[8] As the First Circuit noted in Ryan, "inquiry notice" is not really a third distinct type of notice, but a corollary of both actual and constructive notice. "Inquiry notice follows from the duty of a purchaser, when he has actual or constructive notice of facts which would lead a prudent person to suspect that another person might have an interest in the property, to conduct a further investigation of the facts." In re Ryan, 851 F.2d at 507 (citations omitted).
[9] BAC directs our attention to the New Mortgage included in the record as an exhibit to its Answer in the adversary proceeding and attaches the New Mortgage again as an exhibit to its Reply Brief. But in neither instance does BAC provide a copy of the Old Mortgage so that we can establish how the property there was described, nor do the stipulated facts ever clearly state that the Old Mortgage contained the same street address as the New Mortgage.