Michael P. BLAIS, d/b/a Straightline Builders, and Melissa A. Blais, Debtors.

U.S. Bank National Association, as Trustee for Holders of Bear Stearns Asset–Backed Securities I Trust 2006–IM1, Asset–Backed Certificates, Series 2006–IM1, Appellant,

v.

Michael P. Blais and Melissa A. Blais, Appellees.

BAP No. EP 13–056.
Bankruptcy No. 12–20972–PGC.

United States Bankruptcy Appellate Panel of the First Circuit.

July 8, 2014.

Michael K. Martin, Esq., and Jisel E. Lopez, Esq., Portland, on brief for Appellant.

James F. Molleur, Esq., Jennifer G. Hayden, Esq., Biddeford, and Jessica A. Lewis, Esq., Portland, on brief for Appellees.

Before FEENEY, BAILEY, and HOFFMAN, United States Bankruptcy Appellate Panel Judges.

HOFFMAN, Bankruptcy Judge.

U.S. Bank National Association, as Trustee for Holders of Bear Stearns Asset–Backed Securities I Trust 2006–IM1, Asset–Backed Certificates, Series 2006–IM1 (the "Bank"), appeals from the bankruptcy court order (the "Order") sustaining the objection of the debtors, Michael P. Blais and Melissa A. Blais, to its secured claim. For the reasons discussed below, we **VACATE** the Order and **REMAND** to the bankruptcy court for further proceedings consistent with this opinion.

## BACKGROUND

Richard and Noella Michaud conveyed property located at 351 West Street, Biddeford, Maine (the "Original Property") to Mr. Blais, by deed dated August 17, 2001. The Michauds owned the property next door. On May 13, 2002, Mr. Blais conveyed the Original Property to himself and Ms. Blais, as joint tenants. On December 22, 2004, the Blaises conveyed back to the Michauds a seven-foot strip of land which comprised a portion of the Original Prop-

erty abutting the Michauds' property, retaining the remaining land on which their home was located (the "Remaining Property").

On November 28, 2005, in connection with a refinance of the debt on the Remaining Property, the Blaises executed a $245,000.00 promissory note (the "Note") in favor of Impac Funding Corporation d/b/a Impac Lending Group, the Bank's predecessor-in-interest. To secure their obligations under the Note, the Blaises executed a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Services, Inc. ("MERS"), as nominee for Impac and Impac's successors and assigns. The Mortgage was recorded in the York County Registry of Deeds in Book 14704, Page 0215 on December 16, 2005, and identified the subject property as 351 West Street, Biddeford, Maine. The legal description attached to the recorded Mortgage, however, rather than describing the Remaining Property, mistakenly described only the seven-foot strip which the Blaises no longer owned.

MERS assigned the Mortgage to the Bank on May 23, 2011. Thereafter, the Blaises defaulted on their obligations under the Note and the Bank commenced a foreclosure action in state court. On September 15, 2011, the court entered judgment with the consent of the Bank and the Blaises (the "Consent Judgment") which provided, among other things, that:

> The [Bank] is the current holder of a mortgage on real estate located at 351 West Street, Biddeford, York County, State of Maine to secure the Note, which mortgage is recorded in the York County Registry of Deeds in Book 14704, Page 215 ("Mortgage"); the legal description of which mortgaged property contained in the Mortgage ("Property") is incorporated herein by reference.

Like the Mortgage, the Consent Judgment attached as Exhibit A a legal description of only the seven-foot strip. Pursuant to the terms of the Consent Judgment, the parties agreed: (1) there was no genuine issue as to any material fact involving the Bank's foreclosure complaint; (2) the Mortgage enjoyed a first priority position; and (3) if the Blaises failed to redeem by paying the judgment amount within 120 days of the entry of the Consent Judgment, the Bank would be entitled to proceed with a sale of the property described in the Mortgage and at its option to take exclusive possession of the property.

The Blaises failed to redeem. Before the scheduled foreclosure sale, however, the Bank learned of the error in the legal description attached to the Mortgage. The foreclosure sale was postponed and on May 22, 2012, the Bank commenced an action in the York County Superior Court seeking to reform the Mortgage to reflect the parties' original intention that it encumber the Remaining Property.

Also on May 22, 2012, the Bank's counsel caused to be recorded in the York County Registry of Deeds his affidavit (the "Affidavit"), in which he averred that he had commenced a reformation action against the Blaises on behalf of the Bank, which action related to property known as 351 West Street, Biddeford, Maine. He further averred that the property involved in the action was the property described in the deed dated May 13, 2002, from Mr. Blais to himself and Ms. Blais, except for the seven-foot strip which had been conveyed to the Michauds. In other words, the Affidavit identified the affected real estate as the Remaining Property. The next day, the clerk of the court caused to be recorded in the York County Registry of Deeds a Clerk's Certificate in which she described the reformation action as follows:

I, Diane Hill, Clerk of the York County Superior Court, certify that [the Bank], as Plaintiff, has filed in this Court a Complaint against Michael P. Blais and Melissa A. Blais ... as Defendants. In this action, Plaintiff seeks to reform a mortgage deed between Plaintiff and Defendants. The specific real property affected by the action is located at 351 West Street in the City of Biddeford, County of York, and State of Maine. Defendants' property is more particularly described in a deed dated May 13, 2002, and recorded in the York County Registry of Deeds at Book 11622, Page 278, excepting the 7–foot strip conveyed to Richard and Noella Michaud on December 22, 2004, and recorded in said Registry in Book 14331, Page 93.

The Complaint is dated May 22, 2012. It was filed with this Court on May 22, 2012.

On August 2, 2012, during the pendency of the reformation action and before the entry of any judgment, the Blaises filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code [1] in the United States Bankruptcy Court for the District of Maine. In their August 14, 2012, chapter 13 plan of reorganization (the "Plan"),

the Blaises treated the Bank's claim as unsecured and the Remaining Property as unencumbered. The Plan disclosed a total of approximately $284,000.00 of unsecured debt and projected that nearly $140,000.00 would be disbursed to general unsecured creditors. On schedule A-real property, accompanying their bankruptcy petition, the Blaises listed their ownership of the Remaining Property, which they valued at $260,000.00.[2] On their schedule C-property claimed exempt, the Blaises claimed a $95,000.00 exemption in the Remaining Property pursuant to Me.Rev.Stat. Ann. tit. 14, § 4422(1)(A).

The Bank filed an objection to confirmation of the Plan asserting that its claim was fully secured and superior to the interests of the chapter 13 trustee under Bankruptcy Code § 544(a). In support, the Bank alleged that: (1) the parties to the original Mortgage transaction intended that the Remaining Property would secure the Note; and (2) because the Affidavit and the Clerk's Certificate gave the trustee constructive notice of the Bank's reformation claim, he lacked bona fide purchaser status under § 544.[3]

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Rules" are to the Federal Rules of Bankruptcy Procedure.

2. Although the Blaises' schedules are not part of the record, we may take judicial notice of the bankruptcy court's docket and imaged papers. *TD Bank. N.A. v. LaPointe (In re LaPointe)*, 505 B.R. 589, 591 n. 1 (1st Cir. BAP 2014) (citation omitted).

3. Section 544(a) provides, in relevant part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any

transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The Bank then filed a proof of claim on December 5, 2012, stating that it was the holder of a $318,562.61 claim, secured by the property located at 351 West Street, Biddeford, Maine. The trustee did not object to the Bank's proof of claim but the Blaises did, filing an objection on December 27, 2012, wherein they argued that "because the Mortgage on its face purported to convey only property that the Blaises did not own, it in fact conveyed a nullity."[4] They requested the entry of an order pursuant to § 506(d) voiding any and all liens purportedly securing the Bank's claim and allowing it as a general unsecured, nonpriority claim.

In its January 29, 2013, response to the claim objection, the Bank admitted that the legal description attached to the Mortgage erroneously described the seven-foot strip, but maintained that the parties always had intended that the Mortgage encumber the Remaining Property, and that as to third parties, they had been put on notice of the error as well as of the reformation action when the Affidavit and Clerk's Certificate were recorded in the York County Registry of Deeds. As a defense, the Bank reiterated that the trustee lacked bona fide purchaser status under § 544. The Bank sought an order overruling the Blaises' claim objection and allowing its claim as secured.

In their subsequent joint pretrial statement as well as in their joint pretrial memorandum submitted to the bankruptcy court, the parties presented no disputed factual issues. They identified the legal issues as follows:

(a) What is the effect of the notice of reformation filed in the Registry of Deeds by the [Bank]?

(b) If the notice of reformation is effective to give the [Bank] a colorable secured claim on the [Blaises'] property, is that notice a *voidable* preference?

(c) Where the [Bank] obtained a foreclosure judgment, merging the note and mortgage on the 7[-] foot parcel, what is left to reform?

Additionally, in the joint pretrial memorandum, the parties stipulated:

At the time the Blaises executed the Note and Mortgage, they understood and intended that the Mortgage conveyed a security interest in their house located at 351 West Street, Biddeford, Maine, and that if they did not make the scheduled payments, the Lender would have the right to foreclose on their home located at 351 West Street, Biddeford, Maine.

Thereafter, the parties submitted briefs, in compliance with the bankruptcy court's directive. The Blaises argued in their brief that, as of their bankruptcy petition date, the Remaining Property became property of their bankruptcy estate and that on that date the Bank had no interest in that property and thus its claim was wholly unsecured under § 506(d).[5] They

---

11 U.S.C. § 544(a)(1) and (3).

**4.** Rule 3007(a) provides that "[a]n objection to the allowance of a claim shall be in writing and filed." Subsection (b) of Rule 3007 provides that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Rule 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other

interest in property, other than a proceeding under Rule 4003(d)" is an adversary proceeding. Notwithstanding the foregoing provisions, no party objected to the bankruptcy court's consideration of the Blaises' claim objection as a contested matter rather than as an adversary proceeding. Consequently, we presume that all parties consented to the treatment of this dispute as a contested matter. Fed. R. Bankr.P. 9014.

**5.** Section 506(d) provides:

contended that if the Clerk's Certificate accomplished anything at all, because it was recorded within 90 days of their bankruptcy petition date, it constituted an avoidable preferential transfer under § 547. Relying on *Stillwater Nat'l Bank & Trust Co. v. Woolley*, 823 P.2d 374, 377 (Okla.Civ.App.1991), they also argued that as a result of the state court Consent Judgment the Note and Mortgage had merged into the Judgment, leaving nothing to reform.

On the other hand, the Bank maintained that Maine law controlled the parties' rights in and to the Remaining Property. According to the Bank, Maine law governing mutual mistake compelled reformation of the Mortgage retroactive to its date of execution to effectuate the intent of the parties. Under this theory, the Bank's purported interest in the Remaining Property arose at the time the Mortgage was executed and despite the erroneous property description remained valid as between the parties thereto subject to a continuing right to seek reformation to cut off any rights of potential innocent third parties. The Bank repeated its position (even though the Blaises have never raised this argument) that the Blaises' bankruptcy trustee was not an innocent third party under Maine law, because the Clerk's Certificate and the Affidavit gave him actual notice of the Bank's interest. The Bank also argued that the recording of the Clerk's Certificate was not the type of transfer that could be avoided as a preference under § 547(b). Finally, the Bank disagreed with the Blaises' merger argument, maintaining that under Maine law only a foreclosure sale could have effected a merger and no sale had yet occurred.

On November 5, 2013, the bankruptcy court presented its ruling from the bench on the Blaises' claim objection as follows:

> What we have here is basically akin [to] the creditor arguing the dependency of an initiative unilaterally instituted by the creditor seeking ... an equitable remedy to establish a mistakenly lost interest in the real property....

> In other words, they are asserting that they were entitled to reform the deed. The reformation of the deed would include encumbering the properly described property....

> It's akin to cases where a creditor seeking to establish that he has rights against property of the Debtor by way of constructive trust but the constructive trust has yet to be imposed by a state court or a court of general jurisdiction to do that.

> And the law is really pretty clear on that and it's a narrow basis, a decision, but property interest[s] in the estate, the establishment of them, the existence of them or the absence of them, are determined with reference to state law under [*Butner*], among other cases, 440 U.S. 48 [99 S.Ct. 914]. They are fixed with few exceptions at the time of the filing of the petition, what the Debtor owns and what the Debtor doesn't own as of the filing of the petition.

> The [sic] Section 541 including 541(d) does not authorize bankruptcy courts to recognize an equitable claim on property based on the creditor's claim of entitlement to that claim. This is really Bankruptcy 101 that if it hasn't been reduced to judgment yet then it doesn't exist.

---

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

  (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

  (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

It's a unilateral claim just like other claims in bankruptcy and is subject to allowance or disallowance based on the status of the property on the date of filing.

If the state law has impressed that property with the equitable interest by final action or unavoidable action prior to the filing of the bankruptcy, then the interest is fixed and (inaudible) bankruptcy but if it has not impressed with the remedy that is the result of the unilaterally initiated action by the creditor at bankruptcy it's not subject to that creditor's claim as a matter of property securing that creditor's claim.

And that's what's going on here. The bank finally realized its mistake after, by the way, foreclosing on the seven-foot strip and has sought, basically, to reform the mortgage deed to cover the Debtor[s'] property. That property existed and as unencumbered by anything other than a non-final unilateral claim in bankruptcy. That's not sufficient to provide the creditor with a secured claim.

. . .

Its claim is unsecured and judgment will enter accordingly . . .

On the same date, the bankruptcy court entered the Order that is the subject of this appeal. The issues on appeal raised by the Bank may be summarized as follows:

1. Whether the bankruptcy court erred in ruling that the Bank did not hold any interest in the Blaises' property located at 351 West Street as of the petition date?

2. Whether the Affidavit and Clerk's Certificate preclude the trustee from taking the property free of the Mortgage pursuant to § 544?

3. Whether the recording of the Affidavit and Clerk's Certificate constitute an avoidable preference?

### JURISDICTION

A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus. Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (internal quotations and citation omitted). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted). "A bankruptcy court order sustaining an objection to a proof of claim is a final, appealable order." *B–Real LLC v. Melillo (In re Melillo)*, 392 B.R. 1, 4 (1st Cir. BAP 2008) (citations omitted). Thus, the Order is final and appealable.

### STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). As the Bank does not dispute any material facts, the Panel's review is *de novo. Perrino v. BAC Home Loans Servicing, LP (In re Trask)*, 462 B.R. 268, 273 (1st Cir. BAP 2011).

### DISCUSSION

This matter arises out of the Blaises' objection pursuant to § 506(d) to the Bank's asserted secured proof of claim. The bankruptcy court ruled that the Bank's claim was unsecured. On appeal, the Bank argues that the bankruptcy court erred: (1) by failing to conclude that on

the petition date the Bank held, continuously since the inception of the Mortgage, at least an equitable lien on the Remaining Property; and (2) by refusing either to reform the Mortgage or to grant the Bank stay relief to return to state court to complete the reformation process. The Blaises counter that the bankruptcy court got it right because on the date of their chapter 13 petition when the Remaining Property became property of their bankruptcy estate, it was unencumbered by the Mortgage. On that date, the Blaises say, the only property encumbered by the Mortgage was the seven-foot strip.

Much of the parties' argument here and in the court below, and indeed two out of the three issues raised by the Bank in this appeal, focus on whether the recording of the Affidavit or Clerk's Certificate are avoidable transfers under § 544 or § 547 of the Bankruptcy Code.[6] But these issues are secondary and subservient to a more fundamental one—can the Blaises prevail on their claim objection based on the argument that the Bank did not hold any interest in the Remaining Property on the date of their bankruptcy petition. If the Bank held an interest such as an equitable lien on the Remaining Property arising at the inception of the Mortgage and continuing until the bankruptcy petition date, that interest would not be avoidable as a preference so it would not matter if the recording of the Affidavit or Clerk's Certificate

were avoidable. We, therefore, turn our attention to the core issue.

■ As between the Blaises and the Bank, the validity of the Mortgage as a lien on the Remaining Property is an issue purely of Maine law.[7] The bankruptcy court recognized this when it observed: "[P]roperty interest[s] in the estate, the establishment of them, the existence of them or the absence of them, are determined with reference to state law under *Butner*," referring to *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ *Butner* established that "[p]roperty interests are created and defined by state law." *Id.* As the Supreme Court explained:

> Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of a bankruptcy. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests . . .

6. On appeal, the Blaises raise for the first time their standing to avoid the transfers effected by the Affidavit and Clerk's Certificate pursuant to § 522(h). Having failed to raise the argument in the court below, the Blaises may not raise it now. *Back Bay Spas. Inc. v. 441 Stuart Mktg., LLC,* 688 F.3d 61, 67 (1st Cir.2012) (stating "legal theories not raised squarely in the lower court cannot be broached for the first time on appeal") (citation and internal quotations omitted).

7. Under no theory would the Blaises have standing to attack the validity of their volun-

tarily-granted Mortgage based on a trustee's chapter 5 avoiding powers. *See Callanan v. Int'l Fid. Ins. Co. (In re Callanan),* 190 B.R. 137, 139 (Bankr.D.Mass.1995) (citations omitted) (stating a debtor's standing, if any, to avoid a lien is limited to situations where the debtor can prove, *inter alia,* that the subject lien was involuntary). At oral argument, the Blaises' counsel conceded that the only chapter 5 avoidance claims asserted by them were in connection with the Clerk's Certificate and Affidavit, not the Mortgage itself.

*Id.* (internal quotations and citations omitted).

■ We have previously noted that "under Maine law, an unrecorded conveyance is ineffective 'against any person *except the grantor*, his heirs and devisees, and persons having actual notice thereof' " *Me. Nat'l Bank v. Morse (In re Morse),* 30 B.R. 52, 54 (1st Cir. BAP 1983) (quoting Me.Rev.Stat. Ann. tit. 33, § 201) (emphasis added). In other words, under Me.Rev. Stat. Ann. tit. 33, § 201, "neither purchasers nor creditors who are deemed to have actual notice of an unrecorded interest are protected." *Morse,* 30 B.R. at 55 (citations omitted). But also, as "between the parties to the instrument . . . , the instrument is valid." 1 Caspar F. Cowan and J. Gordon Scannell, Jr., *Maine Practice, Real Estate Law & Practice* § 11:12 (2d ed. 2013).

■■ Furthermore, under Maine law, a court may reform a flawed mortgage in the event of mutual mistake by the parties. *In re Trask,* 462 B.R. at 273–74 (citing *Baillargeon v. Estate of Daigle,* 8 A.3d 709, 714 (Me.2010); *Dumais v. Gagnon,* 433 A.2d 730, 735 (Me.1981); *Williams v. Libby,* 118 Me. 80, 105 A. 855 (1919); *In re Pribish,* 25 B.R. 403 (Bankr.D.Me.1982)). "A party seeking to reform a deed must demonstrate mutual mistake of fact by clear and convincing evidence." *Baillargeon,* 8 A.3d at 714 (citing *Strout v. Gammon,* 629 A.2d 43, 46 (Me.1993)); *see also Bryan v. Breyer,* 665 A.2d 1020, 1022 (Me. 1995) (citation omitted). Under this standard, "the party with the burden of persuasion may prevail only if he can 'place in the ultimate factfinder an abiding conviction that the truth of [his] factual contentions are 'highly probable.' " *Taylor v. Comm'r of Mental Health and Mental Retardation,* 481 A.2d 139, 153 (Me.1984) (quoting *Colo. v. N.M.,* 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984)); *see*

*also Baillargeon,* 8 A.3d at 714; *Bryan,* 665 A.2d at 1022. "[T]he weight of evidence and credibility of witnesses are matters exclusively within the province of the fact-finder." *Baillargeon,* 8 A.3d at 714 (citation and alteration omitted).

■ The bankruptcy court did not consider these issues of Maine law in determining the nature of the Bank's interest in the Remaining Property as of the date of the Blaises' bankruptcy petition.

■ There is also the issue of merger. The Blaises argue that under Maine law, upon entry of the Consent Judgment in the state foreclosure action, the Note and Mortgage merged into the Consent Judgment so there was nothing left for a court to reform. While the bankruptcy court failed to address this issue of Maine law as well, we conclude that its error was harmless because the doctrine of merger does not apply here.

> Although the doctrine of merger is meant to prevent excessive litigation, its application to deprive the litigant of a cause of action is limited by equitable concerns, and will not be carried any further than the ends of justice require. The judgment does not annihilate the debt, destroy its character as evidence, or change the essential nature and real foundation of the cause of action. It does not preclude all inquiry as to the character or nature of the original cause of action, or an ascertainment of whether or not the claim is really one of a nature such as the court is authorized to enforce; and, when the essential rights of the parties are influenced by the original contract, the court will look behind the judgment for the purpose of ascertaining what the original contract was.

50 C.J.S. *Judgments* § 934 (2014) (footnotes omitted); *see also Murphy v. Manning,* 134 Mass. 488, 1883 WL 10892, at *1

**736**

(Mass.1883) ("A judgment does not obliterate the essential features of the obligation on which it is rendered.") (citation omitted).

■■■ The foregoing suggests that the merger doctrine will not preclude reformation of a mortgage that is based on mutual mistake if such application of the doctrine would produce an inequitable result. In *Baillargeon*, the Supreme Judicial Court of Maine stated:

> The doctrine of merger by deed provides that once a ... deed is accepted it becomes the final statement of the agreement between the parties and nullifies all provisions of the purchase-and-sale agreement. Merger by deed, however, does not prohibit reformation upon proof of a mutual mistake of fact at the time of closing.

8 A.3d at 714 (internal quotations and citations omitted). If merger by deed does not prohibit reformation upon proof of mutual mistake, merger by judgment, especially foreclosure judgment, should not either. The Consent Judgment contemplated the Bank's conducting a foreclosure sale of the mortgaged property in the event the Blaises failed to pay the Judgment amount. If anything, it would be the foreclosure sale and delivery of a foreclosure deed that would cause the Mortgage to merge into the Consent Judgment. But, as the Maine Supreme Judicial Court ruled in *Baillargeon*, even merger by deed does not prohibit reformation upon proof of mutual mistake.

The merger issue notwithstanding, we conclude that the bankruptcy court erred in failing to consider other applicable principles of Maine law in its analysis of the erroneous property description contained in the Mortgage, specifically the right of a mortgagor to attack the validity of the mortgage to which it is a party, and the right of a mortgagee to reform it upon a showing of mutual mistake. In connection with this latter point, the bankruptcy court, or perhaps the state court if a motion for relief from stay were granted, might require further proceedings in order to determine if the existence of mutual mistake is supported by clear and convincing evidence, which is the standard of proof under Maine law in reformation actions.

### CONCLUSION

For the foregoing reasons, we **VACATE** the Order and **REMAND** with instructions that the bankruptcy court apply Maine law to the facts of this case, determining, or allowing the state court in the pending reformation action to determine, such additional facts as may be required.