MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 129
Docket:      And-15-454
Submitted
  On Briefs: June 22, 2016
Decided:     August 11, 2016

Panel:SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ESTATE OF PAUL GAGNON

HUMPHREY, J.

[¶1]  The personal representative of the Estate of Paul Gagnon appeals from a judgment of the Androscoggin County Probate Court (*Dubois, J.*) in favor of Cecile Poulin following a bench trial on Poulin's claims of, inter alia, breach of fiduciary duty and undue influence against the Estate.  Poulin cross-appeals from the court's denial of her motion for attorney fees.  We conclude that there was sufficient evidence to support the Probate Court's finding that Paul Gagnon misappropriated Poulin's funds and was not acting pursuant to the authority granted to him by the power of attorney executed by Poulin.  We also conclude that the Probate Court did not abuse its discretion nor err as a matter of law when it denied Poulin's motion for attorney fees. We therefore affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts were found by the Probate Court after a bench trial on Cecile Poulin's complaint against the Estate of Paul Gagnon for the unauthorized withdrawal of funds from her bank account, and they are supported by competent evidence in the record.  *Estate of Fournier*, 2009 ME 17, ¶ 6, 966 A.2d 885.

[¶3]  Following her husband's death in 2005, Poulin, then eighty-five or -six, asked her nephew, Paul Gagnon, to assist her with her financial affairs—duties that had previously been performed by her late husband. Gagnon assumed this role and also assisted her in her daily life, such as transporting her to her appointments and running errands for her.  Poulin asked Gagnon to withdraw money from her bank account to provide her with living expenses, and he routinely gave her $300 once a month.  However, instead of making only the single monthly withdrawal, bank records showed additional ATM withdrawals of $300 one or more times each month from February 2005 until July 2009,[1] when Gagnon was hospitalized with a heart condition.

---

[1]  Although the court stated that the bank records showed *four or five* ATM withdrawals per month from 2005 to 2009, the bank records actually showed between one and three withdrawals per month from February 2005 to April 2007 and thereafter showed, with few exceptions, between two and six withdrawals per month from May of 2007 to July of 2009.  Notwithstanding this

[¶4]    While Gagnon was in the hospital, from mid-July 2009 to November 2009, he could not complete financial transactions for Poulin.  At his request, his wife and daughter provided Poulin with her monthly spending money, and bank records indicated that only three withdrawals of $300 were made during that three-month period.  After Gagnon's discharge from the hospital, Poulin's account was changed into a joint account naming both Gagnon and Poulin as holders.  Records from the joint account show that, following Gagnon's discharge, the frequency of ATM withdrawals occurring before Gagnon's hospitalization resumed.  In June 2011, Poulin signed a durable power of attorney appointing Gagnon as her agent, which included the power of self-gifting.  Poulin testified that she did not know what the document was and did not remember signing it.

[¶5]    After Gagnon died in November 2012, Poulin asked Gagnon's nephew, Robert Gagnon, to help with her finances.  Robert withdrew the $300 per month she requested, but he had to gradually decrease that amount as her funds diminished.  Robert noticed that a substantial number of withdrawals had been made prior to his uncle's death, and he obtained complete banking

---

discrepancy, the court's calculations of the total amount withdrawn during the relevant years, which provided the basis for the amount of damages due to Poulin, were correct and consistent with the record evidence.

records for the period from February 3, 2005, to November 21, 2012. These records revealed ATM withdrawals from Poulin's account totaling $91,620, a sum well in excess of the amount that Poulin actually received during that time. In March 2013, Poulin filed a claim against Gagnon's Estate, alleging unauthorized withdrawal of funds, fraud, breach of fiduciary duty, and undue influence. Both parties filed motions for attorney fees.

[¶6] In December 2014, the Androscoggin County Probate Court held an evidentiary hearing. In an order dated March 25, 2015, the court concluded that (1) Gagnon had not violated any duty imposed by the Maine Uniform Power of Attorney Act, *see* 18-A M.R.S. § 5-914 (2015), because he had not acted pursuant to his grant of that power; (2) Poulin had met her burden of establishing that she had a fiduciary or confidential relationship with Gagnon, resulting in a presumption of undue influence; (3) the Estate failed to sustain its burden of showing that Gagnon acted with "entire fairness" and that the transaction was free of any undue influence affecting Poulin's interest; and (4) Poulin had not received the benefit of the additional ATM withdrawals. In fact, she had not even spent the entire $300 she *had* received each month.

[¶7]  The court concluded that Gagnon "misapplied Poulin's assets, using them for his own benefit and manifestly violating his fiduciary duty," and it granted Poulin's claim for damages in the amount of $63,420.  The court denied Poulin's motion for attorney fees because it did "not find any support for [her] request for an award of attorney's fees in the [Probate] Code."

[¶8]  Poulin filed a motion for alteration or amendment of judgment as to the denial of her request for attorney fees, and the Estate filed motions for additional findings of fact and conclusions of law and for reconsideration.  In August 2015, the court entered an order denying all of the motions, but this time, based on a different analysis, it addressed the merits of Poulin's arguments in support of her request for attorney fees.  The Estate appealed, and Poulin cross-appealed.

## II.  DISCUSSION

A.    Sufficiency of the Evidence

[¶9]  The Estate argues that the court erred by (1) shifting the burden to it prior to a showing by Poulin that Gagnon actually retained or converted any funds for his own benefit and (2) finding that Gagnon was the one who made

withdrawals between March 2005 and August 2009 because there was no evidence to establish that he had access to Poulin's accounts during that time.[2]

[¶10] The proponent of a common-law undue-influence claim "must prove both the existence of a confidential relationship[3] and the superior party's receipt of a benefit flowing from the relation[ship] in order to create a presumption of undue influence." *Theriault v. Burnham*, 2010 ME 82, ¶ 6 n.2, 2 A.3d 324 (alteration in original) (quotation marks omitted). Once the presumption is established, "the burden shifts to the benefitted party to demonstrate affirmatively that he transacted with entire fairness and that the transaction was free of any undue influence affecting the other party's interests." *Albert v. Albert*, 2015 ME 5, ¶ 8, 108 A.3d 388 (quotation marks omitted).

[¶11] The record in this case contains sufficient evidence to establish that Gagnon received a "benefit flowing from" his confidential relationship with Poulin between 2005 and 2012, and the court properly shifted the burden to his Estate to prove the entire fairness of the transactions and

---

[2] The cases cited by Poulin in support of her argument that the Estate did not preserve its sufficiency-of-the-evidence claim because it did not move for a judgment as a matter of law, pursuant to M.R. Civ. P. 50(d), are inapposite because they involve motions for a judgment as a matter of law in actions tried by *juries*.

[3] The Estate does not challenge the court's finding that a confidential relationship existed between Gagnon and Poulin.

freedom from undue influence. First, regarding Gagnon's access to, and misuse of, Poulin's bank account, exhibits and testimony demonstrated that the pattern of multiple $300 ATM withdrawals each month began shortly after Poulin's husband died, when Gagnon took over her finances. Second, Poulin testified that Gagnon gave her $300 per month for living expenses, and Gagnon's daughter testified that Gagnon gave either her or her mother the ATM card and PIN for them to take out money for Poulin's benefit during his hospitalization. Third, only three ATM withdrawals were made during the three months that Gagnon was hospitalized, providing circumstantial evidence that Gagnon himself was responsible for the additional withdrawals made between 2005 and 2012, when he was *not* in the hospital. Finally, several witnesses testified that, although the bank account was in only Poulin's name for most of the relevant period, she did not drive, and she did not know how to make ATM withdrawals.

[¶12] Although the Estate contends that the court could not shift the burden to it in the absence of evidence that Gagnon "ever used any funds for his own personal use or that he ever retained any funds," because no one knew where the money went, we conclude that the court did not err. We have never held that the alleged victim must make a showing as to how the

8

defendant "retained" or "used" the ill-gotten gains in order to establish a presumption of undue influence flowing from a defendant's receipt of those gains.

B.    Damages

[¶13]  The Estate also argues that the court erred by awarding damages for ATM withdrawals made after Poulin executed a power of attorney appointing Gagnon as her agent in June 2011 because the power of attorney specifically granted Gagnon the power to give gifts to himself from Poulin's assets.  "Our review of compensatory damage awards, the assessment of which is in the sole province of the fact-finder, is highly deferential.  We will disturb an award of damages only when it is plain that there is no rational basis upon which the amount of the award may be supported. . . ."  *Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 43, 16 A.3d 137 (citations and quotation marks omitted).  "The fact-finder may also act upon probable and inferential . . . proof in determining damages."  *Id.* (alteration in original) (quotation marks omitted).

[¶14]  The court found that there was no evidence that Gagnon accessed Poulin's account specifically pursuant to the power of attorney.  In fact, there was no evidence that Gagnon even provided a copy of the document to the

bank. To the contrary, the regular pattern of unauthorized withdrawals from 2005 to Gagnon's death in 2012, interrupted only while he was in the hospital, did not change after Gagnon was given power of attorney. Thus we conclude that there is a rational basis to support the court's award of damages for the period from June 2011 to Gagnon's death, and we discern no error.

C. Attorney Fees

[¶15] Poulin cross-appeals, arguing that the court erred in its original judgment when it declined to award her attorney fees on the ground that the Probate Code did not authorize such an award. "Whether the trial court is authorized to award attorney fees is generally a question of law." *Estate of Weatherbee*, 2014 ME 73, ¶ 17, 93 A.3d 248. "We review a trial court's decision concerning the award of attorney fees for an abuse of discretion."[4] *Estate of Marquis*, 2003 ME 71, ¶ 22, 822 A.2d 1153.

[¶16] As Poulin argues, the plain language of the Code, 18-A M.R.S. § 1-601 (2015), supports the interpretation that *either party* in *any* contested matter in the Probate Court, which includes this case and this claimant, may

---

[4] "Review for an abuse of discretion involves resolution of three questions: (1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness." *McLeod v. Macul*, 2016 ME 76, ¶ 6, --- A.3d --- (quotation marks omitted).

be awarded attorney fees.  *See, e.g., Estate of Ricci*, 2003 ME 84, ¶¶ 28-32, 827 A.2d 817; *Estate of Deschenes*, 2003 ME 35, ¶¶ 15-16, 818 A.2d 1026.  If the court's analysis ended with the conclusion that the Code did not authorize an award, Poulin's claim would have merit.

[¶17]  However, Poulin appropriately brought the legal issue to the court's attention when she renewed her request for attorney fees in a post-judgment motion for alteration or amendment of the judgment, and, in its order denying that motion, the court reconsidered and applied section 1-601 to the facts of the case.  In explaining its reasoning for denial of Poulin's motion, the court noted that she could have brought this claim while Gagnon was alive, in which case, under the "American Rule," each party would be responsible for his or her own attorney fees.  The court explained that, "[t]he fact that the decedent's conduct was discovered after his death, and the claim had to be asserted against the estate, does not provide justification for an award under 1-601."

[¶18]  Although the court initially denied Poulin an award of attorney fees based on an erroneous conclusion that the Probate Code did not allow that relief, it reconsidered its authority with respect to the attorney fees issue in its decision on Poulin's motion for alteration or amendment of judgment,

correctly considered section 1-601, and did not abuse its discretion when in the circumstances of this case it denied the motion.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jason Dionne, Esq., Isaacson & Raymond, P.A., Lewiston, for appellant Estate of Paul Gagnon

Paul P. Murphy, Esq., and Coleman G. Coyne Jr., Esq., Murphy & Coyne Law Offices, P.A., Lewiston, for cross-appellant Cecile Poulin

Androscoggin County Probate Court docket number 2012-499