MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 32
Docket:        Cum-17-424
Submitted
  On Briefs:   February 26, 2018
Decided:       March 6, 2018

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


# IN RE CHILD OF ERIC K.


PER CURIAM

[¶1]  Eric K. appeals from a judgment of the District Court (Portland, *Duddy, J.*) terminating his parental rights to his child pursuant to 22 M.R.S. § 4055(1)(A)(1) and (B)(2)(a), (b)(i)-(ii) (2017).[1]  He challenges the sufficiency of the evidence to support the judgment and the court's discretionary determination of the child's best interest.  Because the evidence supports the court's findings and discretionary determination, we affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found, by clear and convincing evidence, that the father is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs and that the father is unwilling or unable to take responsibility for the child within a time

---

[1]  The court (*Duddy, J.*) also terminated the mother's parental rights on September 15, 2017.  The mother did not appeal.

2

reasonably calculated to meet her needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The court also found that termination of the father's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055 (1)(B)(2)(a); *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199. The court based its findings of parental unfitness and its determination of the child's best interest on the following findings of fact:

> [The father] has a lengthy history of substance abuse and criminal activity. As a young man, [he] was convicted of a federal trafficking charge, and spent nearly 20 years in federal prison. . . .

> [The father] did not see or meet [the child] until late October 2015, or early November 2015. At the time he was not sure [she] was his child . . . . [He] has never lived with [the child] in his household.

> In October 2015, shortly after his release from prison, [the father] violated his probation by using crack cocaine. In June 2016, [he] again violated his probation by testing positive for illegal drugs. . . . [I]n July 2016, [he] agreed to the Court's Jeopardy Order.

> . . . .

> For well over a year, [the father] has failed to secure adequate housing for himself and his daughter. . . .

> . . . .

> [The father] has a new girlfriend [who] is a homeless person whom [he] met at a local homeless shelter three months ago. . . . [He] readily admits that he does not know much about [her]. . . .

> . . . .

[The father] has never parented his daughter, and has demonstrated that he does not have parenting skills to do so.  As part of the Rehabilitation/Reunification Plan, [he] was given visitation with [the child] beginning in September 2016.  [He] attended visits for a period of time, but also had several no-shows and cancelations.  In response to [the child's] challenging behaviors during visits, [he] refused to engage with her . . . .  [He] last visited [the child] on April 6, 2017, and stopped visiting [her].  The Department reached out to [him and he] refused to respond [for several months]. . . . [He] showed little understanding that abruptly stopping visits with his daughter for a period of five months demonstrated poor parenting skills.

. . . .

When asked how he would parent [the child, the father] testified that his plan was to have his new girlfriend . . . become [the child's] primary caregiver.  [The new girlfriend] has never met [the child], and is completely unaware of [the child's] challenging behaviors. . . .

. . . .

[The father] has failed to take the steps required of him to eliminate jeopardy.  He has failed to demonstrate that he can remain sober and drug free, failed to comply with the conditions of his probation, failed to provide or make arrangements for safe housing for him and [the child], and failed to demonstrate age-appropriate parenting skills with [the child]. [His] plan to use his new girlfriend[,] a homeless person of whom he knows next to nothing, as [the child's] primary caregiver, demonstrates a profound lack of understanding of what it takes to resolve jeopardy in this matter.

[The child] entered the custody of the Department on May 2, 2016.  She has now been in foster care for over half her young life.  During that period of time she has experienced a

4

number of different placements. She is beginning to make progress in her current therapeutic foster placement, but she still has substantial behavioral challenges. More than anything, [the child] needs to quickly form a consistent and reliable attachment to a loving, stable, and capable caregiver. . . .

. . . .

[The child] is only two and a half years old, and is still young enough to form a solid attachment to [an adoptive family]. . . .

[¶3]   The father contends that the court erred because the record indicates that he "was working hard to redress the circumstances of jeopardy" and could find adequate housing "within a relatively short period of time." These arguments fail to recognize, however, that "the time frame which the court is gauging must be seen from the child's perspective" and, although the inquiry concerning parental unfitness "is prospective, the evidence to be considered is retrospective." *In re Charles G.*, 2001 ME 3, ¶ 7, 763 A.2d 1163 (quotation marks omitted). After considering the father's inability to comply with his rehabilitation and reunification plan over the past year, the court found that the father—despite his efforts and initial progress—remains incapable of alleviating jeopardy or providing adequate care for the child in a time reasonably calculated to meet her needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Alexander D.*, 1998 ME 207, ¶ 18, 716 A.2d 222. As the court aptly explained, "it is unreasonable to ask or expect [the child] to

wait for some unspecified additional period of months or years for her [father] to resolve jeopardy."

[¶4]  Given these findings and the court's other specific findings of fact, all of which are supported by competent evidence in the record, the court did not err in its unfitness determination nor did it err or abuse its discretion in concluding that termination of the father's parental rights, with a permanency plan of adoption, is in the child's best interest.  *See In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

---

Andrew S. Edwards, Esq., Northland Legal Solutions, LLC, PA, Portland, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2016-36
FOR CLERK REFERENCE ONLY