MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 66
Docket:       Pen-18-426
Submitted
  On Briefs:  April 9, 2019
Decided:      May 7, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF ERICA H.


PER CURIAM

[¶1]  Erica H. appeals from a judgment of the District Court (Bangor, *Jordan, J.*) terminating her parental rights to her child[1] pursuant to 22 M.R.S. § 4055(1)(B)(2)(a) and (b)(i)-(ii) (2018).  She contends that (1) the evidence is insufficient to support the court's findings of parental unfitness, (2) the evidence is insufficient to support the court's determination that termination of her parental rights was in the child's best interest, (3) the foster parents' separation made the best interest finding inappropriate, and (4) the court abused its discretion when it denied her motions for a new trial or to reopen the evidence.[2]  We affirm the judgment.

---

[1] The mother has five children in total.  Her parental rights have been terminated as to four of her children, including the child who is the focus of this appeal.  The father of the mother's remaining child has sole parental rights to that child.

[2] The father's parental rights were also terminated.  The father initially appealed, but he later voluntarily dismissed his appeal.  *See* M.R. App. P. 4(a)(2)(A).

## I. CASE HISTORY

[¶2]  On October 27, 2017, the Department of Health and Human Services filed a petition to terminate the mother's parental rights.  *See* 22 M.R.S. § 4052 (2018).  The court held a three-day hearing on the petition in July and August 2018.  On September 17, 2018, the court found, by clear and convincing evidence, that the mother is unable to protect the child from jeopardy or take responsibility for the child within a time which is reasonably calculated to meet the child's needs.  *Id*. § 4055(1)(B)(2)(b)(i)-(ii).  The court further found that termination of the mother's parental rights is in best interest of the child.  *Id*. § 4055(1)(B)(2)(a).

[¶3]  The court based its decision on the following factual findings, which are supported by competent evidence in the record.  *See In re Child of Jonathan D.*, 2019 ME 14, ¶ 5, 200 A.3d 799.

[¶4]  The mother has a substantial history with the Department.[3]  The child who is the focus of this appeal was six years old at the time of the hearing.

---

[3]  The mother's history with the Department is lengthy—beginning in 2004.  The Department has been involved in this child's life on three separate occasions, starting in 2012 when the Department filed for, and was granted, an order of preliminary child protection, in which custody was granted to the Department.  In February 2013, the court (*E. Walker, J.*) issued a jeopardy order.  Following the birth of a sibling in February 2015, the child and his sibling were returned to the mother's custody and the proceedings were dismissed.  In July 2015, the Department became involved again after receiving reports that the mother was, among other things, manufacturing crystal methamphetamine.  Custody of the child was again granted to the Department through a preliminary protection order.  The case was dismissed in October 2015 because the child's father had alleviated

During his life, he has been involved in child protective proceedings on three separate occasions, and has been in the Department's custody most of his life.

[¶5]   The mother has lived a "difficult and traumatic life," with a significant history of substance abuse and mental health issues.  Although she has been able to maintain her sobriety for an "extended period of time," the mother failed to engage meaningfully in mental health counseling until after the court terminated her parental rights to another child in October 2017, and as a result has considerable past trauma that remains unaddressed.[4]   The court found the mother's recent improvements to be "encouraging, but . . . not timely" and noted that the mother's "track record is not simply the last several months, but must include a longer period of her history."

[¶6]   With regard to the mother's ability to safely parent the child, the court recognized that she has become more amenable to suggestions related to her parenting deficits, but she is highly unlikely to be able to keep the child safe on a daily basis.   The court's concerns were heightened by the mother's

---

jeopardy, and a parental rights and responsibilities order was entered granting primary residence to the father and supervised visits to the mother.

[4]   The court further found, based on the mother's mental health counselor's testimony, that the mother "cannot be pushed too quickly [regarding her therapy], otherwise that can provoke regression and her going back to drug abuse," and that the mother is "early on in her recovery and treatment process."

4

continued association with unsafe people, particularly her ex-boyfriend with whom she lived for a period of time despite her claims that he had been violent toward her on several occasions.

[¶7] The court found that the child "had been in several placements before being placed with the current foster parents," and that he "needs consistency, dependability, and predictability from a parent." The court also heard testimony from the child's foster parents; he has been in their care since the fall of 2016, marking "one of the longest periods of stability" in his life. The foster parents each testified about their recent decision to separate from one another, while also highlighting their dedication to meeting the child's needs and making sure that his life is not disrupted by their separation. The court ultimately determined that the child's best interest will be "served by freeing him up for adoption into a stable, loving, and consistent home," due to his need for permanency, and because the "uncertain nature of the time necessary for [the mother to make sufficient progress] is too substantial a problem for him to have to wait."

[¶8] On September 28, 2018, the mother filed a motion to alter or amend the judgment, *see* M.R. Civ. P. 59(e), and for additional findings of fact, *see* M.R. Civ. P. 52(b), along with a motion for a new trial, *see* M.R. Civ. P. 59(a), or to

reopen the evidence, *see* M.R. Civ. P. 43(j). The Department filed a response to the mother's post-judgment motions on October 18, 2018. The court denied in part and granted in part the mother's motion for additional findings, though it did not alter its decision to terminate the mother's parental rights, and it denied the mother's motion for a new trial or to reopen the evidence. The mother timely appealed. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(2)(B)-(D).

## II. LEGAL ANALYSIS

### A. Parental Unfitness

[¶9] The mother first argues that there is insufficient evidence of parental unfitness. We review the trial court's factual findings that a parent is unfit for clear error. *In re Child of Tanya C.*, 2018 ME 153, ¶ 13, 198 A.3d 777. Contrary to the mother's contentions, there is competent evidence in the record that supports the court's findings of parental unfitness. The court supportably found that—despite the mother's recent improvements—she had failed to participate in mental health services during a significant portion of the proceedings; she had failed to set safe boundaries for the child at supervised visits; she had a lengthy history with the Department; and she continued to associate with unsafe people. Accordingly, the court did not err in its determination that the mother is unable to protect the child from jeopardy or

6

take responsibility for the child within a time reasonably calculated to meet his needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Child of Eric K.*, 2018 ME 32, ¶ 3, 180 A.3d 666; *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

## B.    Child's Best Interest

[¶10]  The mother's primary challenge on appeal appears to be based on the foster parents' separation and its effect on the best interest of the child.  "We review the trial court's factual findings . . . that termination of parental rights is in the child's best interest for clear error and the ultimate decision to terminate parental rights for an abuse of discretion."  *In re Children of Anthony M.*, 2018 ME 146, ¶ 7, 195 A.3d 1229.

[¶11]  The mother argues that the foster parents' recent separation presents concerns about their ability to provide the child with stability and consistency.[5]  However, we have held that the question of *who* will adopt a child after parental rights have been terminated is not an issue that is determined in a termination proceeding.  *See In re Children of Nicole M.*, 2018 ME 75, ¶ 17,

---

[5]  The mother cites to the child's therapist's testimony stating that she "would not be happy" and it would be a "really bad situation" if the foster parents were to separate.  The mother fails to account for the therapist's later testimony that, in order for the foster parents to "carry off excellent co-parenting and not . . . have negative stressful situations, . . . it would be very difficult, and they would have to work very, very hard," but that in her experience, "they did work very hard."

187 A.3d 1; *Adoption of Isabelle T.*, 2017 ME 220, ¶ 9, 175 A.3d 639; *In re Kenneth S.*, 2017 ME 45, ¶ 6, 157 A.3d 244 (noting that "the best interest determination to be made in a termination proceeding [is] distinct from the question of *who* should adopt the child, which is addressed in an adoption proceeding" (citation omitted)).

[¶12]  The court based its best interest findings on the child's need for permanency and the length of time the child has already spent in the Department's custody.  In reaching its determination, the court explicitly found that the best interest of the child "will be served by freeing him up for adoption into a stable, loving, and consistent home."  This finding is supported by evidence in the record.  Accordingly, the court did not commit clear error or abuse its discretion in determining that termination was in the child's best interest.  *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Child of Troy C.*, 2018 ME 150, ¶ 13, 196 A.3d 452; *In re Children of Anthony M.*, 2018 ME 146, ¶¶ 14-15, 195 A.3d 1229; *In re Thomas H.*, 2005 ME 123, ¶ 24, 889 A.2d 297.

C.    Denial of Post-Judgment Motions

[¶13]  The mother finally argues that the court erred when it denied her motion for a new trial or to reopen the evidence because it should have "reconsidered whether it was in [the child's] best interest[] to terminate [the

8

mother's] rights with more evidence about the precise circumstances of the home(s) of [the foster parents], their relationship, and how their separation is affecting [the child], along with any additional evidence regarding any change or improvement in [the mother's] circumstances."

1.    Motion for New Trial

[¶14]   In her motion for a new trial, the mother alleged that "[u]pon information and belief, there has been intensified conflict between the foster parents that has led the Department to change its permanency plan/placement with regard to [the child]" as shown by "additional facts [that were] discovered after the trial."   The court denied the mother's motion, stating that the Department's citation of *In re Children of Nicole M.*, 2018 ME 75, ¶ 17, 187 A.3d 1, in its opposition to the motion accurately states the law.

[¶15]  We review the denial of a motion for a new trial deferentially "for a clear and manifest abuse of discretion."  *In re Kaylianna C.*, 2017 ME 135, ¶ 8, 166 A.3d 976.  "Generally, in the interest of judicial economy and the finality of judgments, [n]ew trials based on newly discovered evidence are disfavored and granted only upon convincing proof," with the burden of proof on the moving party.  *Estate of Fournier*, 2009 ME 17, ¶ 12, 966 A.2d 885 (alteration in

original). In order to prevail on a Rule 59(a) motion for a new trial based on newly discovered evidence, the moving party must prove

> (a) that the new evidence is such that it will probably change the result upon a new trial, (b) that i[t] has been discovered since the trial, (c) that it could not have been discovered before the trial by the exercise of due diligence, (d) that it is material to the issue, and (e) that it is not merely cumulative or impeaching.

*Id.*

[¶16] For the reasons set forth above, *supra* ¶ 11, additional information about conflict between the foster parents was irrelevant to the termination proceeding, and thus the court did not abuse its discretion in denying the mother's motion for a new trial.[6]

2.  Motion to Reopen the Evidence

[¶17] We review a court's denial of a motion to reopen the evidence for an abuse of discretion. *See In re Danielle S.*, 2004 ME 19, ¶ 2, 844 A.2d 1148. "A party who has rested cannot thereafter introduce further evidence except in rebuttal unless by leave of court." M.R. Civ. P. 43(j). "In the context of a proceeding on a petition for termination of parental rights, we have held that a

---

[6] Additionally, the court denied the mother's post-judgment motions after entering a post-termination judicial review and permanency planning order in which it stated that adoption was still the permanency plan and made no indication of a change in the child's placement. Therefore, the court knew that the Department had not changed its permanency plan or placement, and, accordingly, did not abuse its discretion in denying the mother's motion for a new trial based on her erroneous assertions.

court should, but is not required to, reopen the evidence when there is evidence relevant to the issues in the case." *In re Children of Jeremy A.*, 2018 ME 82, ¶ 16, 187 A.3d 602.

[¶18]  For the same reasons we discussed above, *supra* ¶ 11, the court did not abuse its discretion in declining to reopen the record to allow additional evidence about the foster parents' separation.  The court had ample evidence before it to consider the issue after a three-day trial—during which the mother had ample opportunity to cross-examine the foster parents about their separation—and the information was known to the parties at trial.[7]  *See Light v. D'Amato*, 2014 ME 134, ¶ 29, 105 A.3d 447 (holding that the court did not abuse its discretion when it declined to reopen the record after a "lengthy process" had already taken place when the moving party was aware of the information it was seeking to admit before the court entered its judgment).

The entry is:

---

[7]  The court also knew that the Department had not changed its permanency plan or the child's placement when it made its decision to deny the motion.  *See supra* n.6.

Judgment affirmed.

---

Erik T. Crocker, Esq., Farrell, Rosenblatt & Russell, Bangor, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bangor District Court docket number PC-2017-49
FOR CLERK REFERENCE ONLY