JABAR, J.,
dissenting.
[¶ 33] Because I disagree with the Court and would hold that the Department of Health and Human Services’ decision to terminate Doane’s participation in, and reimbursement from; Department-operated medical assistance programs constitutes revocation of a “license” within the meaning of the Administrative Procedure Act, I respectfully dissent. A plain reading of the Administrative Procedure Act, 5 M.R.S. § 10051(1) (2016), and 4 M.R.S, § 152(9) (2016) provides. that, except for certain statutory actions, including action taken by the Board of Licensure in Medicine pursuant to 10 M.R.S. § 8003 (2016), the District Court has exclusive jurisdiction upon the *279 complaint of an agency to revoke a license issued by the agency.
[¶ 34] In civil matters, the District Court has, with limited exceptions by statutory reference, including the Licensure Board, “exclusive jurisdiction upon complaint of an agency ... to revoke or suspend licenses issued by the agency.” 4 M.R.S. § 152(9); see M.R. Civ. P. 80G(a). Similarly, the Administrative Procedure Act provides for jurisdiction in the District Court “upon complaint of any agency” and “upon complaint of an agency to determine whether renewal or reissuance of a license of that agency may be refused.” 5 M.R.S. § 10051(1). The Administrative Procedure Act defines “license” expansively to include “the whole or 'any part of any agency permit, certificaté, approval, registration, charter or similar form of permission- required by law which represents an exercise of the state’s regulatory or police powers.” 5 M.R.S. § 8002(5) (2016). Doane’s right to participate as a provider in the MaineCare program is a “form Of permission” by the Department and meets the Administrative Procedure Act’s definition of “license.”
(¶ 35] Applying the plain meaning of 5 M.R.S. § 8002(5), the decision to authorize MaineCare provider participation and payment is an “approval ,.. required by law which represents an exercise of the state’s regulatory or police powers.” Despite the Department’s contention that it was not acting in its regulatory or policing authority in reaching its decision to terminate Doane’s MaineCare provider participation and payment, its' decision was made to secure the best possible care for Maine-Care patients and-arose from the use of-its power to preserve “the health, safety and comfort of [Maine] citizens.” State v. Pelletier, 2015 ME 129, ¶ 7, 125 A.3d 354 (quotation marks omitted); see also Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (“The traditional police power of the States is defined as the authority to provide .for the public health, safety, and morals .... ”),
[¶36] The Department’s action was a quintessential state. regulatory action, ■ as evidenced by the language of the Department’s notice and its efforts to have the matter proceed through the administrative appeal process established by the Maine-Care Benefits Manual. The notice stated that the Department was “terminating [Doane’s] participation in, and reimbursement from,- ■ all medical .assistance programs administered by the Department,” preventing Doane or any MaineCare “provider for whom [he is] an employee, partner, or owner” from receiving MaineCare reimbursement ‘Tor services rendered by [Doane,] including administrative and management services .... ” The notice goes on to state that “[t]he general practical effect of this restriction is to prohibit employment in any capacity by a provider that receives reimbursement,, indirectly or directly, from MaineCare or other Medicaid programs.” This sanction significantly affects Doane’s practice of medicine in the State of Maine.
[¶37] Removing a doctor1'from Maine-Care reimbursement is not like the other contractual scenarios to which the Department points by which the State may provide for public health and safety, such as contracts for bridge construction, snowplowing; or mobile crisis intervention services. Unlike those contractual services, a doctor’s primary role is to influence the health and safety of patients through direct, one-on-one appointments at regular intervals throughout the patients’ lives. Though the Department administers MaineCare in part through provider agreements, without which a provider may not receive reimbursement from MaineCare funds, 14 C-M.R. 10 144 101-1-2 to -4 §§ 1.02-4(H), 1.03-KA) to (C) (2016), pro *280 viders may be excluded, as here, from the program for violations of regulations or ethics codes. See 14 C.M.R. 10 144 101 — I— 26 to -28 § 1.19-1 to -3 (2014).
[¶38] Sanctions for violations are not contractual in nature. Nor are they mere formalities agreed upon by the providers to the benefit of the Department: they are in place to protect the patients whom the doctor treats. Doane was sanctioned for violation of laws, regulations, or codes of ethics; for failure to meet standards for participation; and for formal reprimand or censure by peers due to unethical practice. 14 C.M.R. 10 144-101-1-26 to -27, § 1.19-1(M), (O), (R). These sanctions are the result of the Licensure Board’s March 2016 censure of Doane following a patient’s death from accidental intoxication from opiate medications Doane had prescribed. His censure and the resulting sanctions are not the result of fraudulent billing, self-referrals, or some other financial or administrative concern. See 14 C.M.R. 10 144-101-1-26 to -27 § 1.19-1(F), (J), (T). The Licensure Board’s censure and the Department’s sanctions are plainly an exercise of the state’s police power to provide for the health and safety of Maine citizens. See Pelletier, 2016 ME 129, ¶ 7, 125 A.3d 354. The Court’s assertion that the Department’s decision to remove Doane from MaineCare affects only the health or safety of those citizens who receive MaineCare services, Court’s Opinion ¶30, does not prove that the Department’s act was not an exercise of the police power. Whether a state is exercising its police power is not defined by the number of people affected; instead, it is determined by the nature of the regulatory action.
[IT 39] Nor does the Department’s purpose to make best use of federal funds provided to the State, Court’s Opinion ¶ 30, prove that the Department’s action here was not an exercise of police power. The Department’s decision was not purely fiscal: because the Department imposed sanctions due to, inter alia, ethical violations, its decision was on its face a decision concerning the welfare of future Maine-Care patients to whom Doane otherwise might have provided medical services. See 10 C.M.R. 10 144 101-1-27 § 1.19-1(M). Though one purpose of the Department may be to create “fiscal benefit,” Court’s Opinion ¶ 30, for Maine citizens, the fiscal benefit is only a secondary purpose. The primary purpose of the Department’s role in MaineCare is to administer a program that provides families and individuals with insufficient income resources access to necessary medical services. See 42 U.S.C.S. § 1396 — 1 (LEXIS through Pub. L. No. 115-51); 22 M.R.S. § 3173 (2016); 24-A M.R.S. § 6911 (2016); see also 22 M.R.S. § 42(1) (2016) (stating that the Department “shall issue rules and regulations considered necessary and proper for the protection of life, health and welfare, and the successful operation of the health and welfare laws”). The Department undertook to sanction Doane not because it would be fiscally imprudent to reimburse Doane for future services provided to MaineCare patients, but because he was censured by the Board for concerns with medical care provided to a patient.
[¶ 40] This removal of Doane from MaineCare reimbursement therefore falls into the broad definition of “license” as that term is used in the Administrative Procedure Act. See 5 M.R.S. § 8002(5). Although based on the same conduct that resulted in a censure by the Licensure Board, this action taken by the Department is separate and distinct from the action taken by the Licensure Board pursuant to 10 M.R.S. § 8003.
[¶ 41] I disagree with the Court that the exceptions from the District Court’s licensing jurisdiction found in 4 M.R.S. § 152(9) *281 provide any indication of the types of suspensions or revocations that are not excepted from the District Court’s licensing jurisdiction, Court’s Opinion ¶27. Title 4 M.R.S. § 152(9) excepts from the District Court’s jurisdiction ' “Title 10, section 8003,” which excepts suspension or revocation of a “license, certification, registration, permit, approval or other similar document evidencing admission to or granting authority to engage in a profession, occupation, business[,] or industry.” 10 M.R.S. § 8003(3); see also id. § 8003(5)(A-1)(2), (2-A). Also excepted are harness. racing licenses, under title 8 section 279-B; licenses pursuant to the Maine Uniform Securities Act, title 32, chapter 135; the Real Estate Brokerage License Act, title 32, chapter 114; and the Maine Emergency Medical Services Act of 1982, title 32, chapter 2-B. While these statutes permit, as the Court notes, Court’s Opinion ¶ 28, complete revocations or suspensions of the authorization to engage in a profession or occupation, these are the exclusions from the District Court’s jurisdiction. It is legally significant that the suspension or revocation of a license by termination from MaineCare reimbursement and participation brought by the Department is not excepted from the District Court’s jurisdiction.
[¶ 42] The Court considers “the functional distinctions between a true license revocation and a termination of participation in a program through a provider agreement” and concludes that the Board of Licensure of Medicine is responsible for policing physicians. Court’s Opinion ¶29. While this may be true, the expansive definition of “license” under the Administrative Procedure Act, coupled with the language of the statute conferring jurisdiction upon the District Court in section 152(9), affords Doane the right to a hearing in the District Court rather than a hearing before the Department. This reading comports with the purpose of the legislation — a neutral decision-maker should decide the contested matter rather than the agency seeking to revoke the physician’s ability to practice. If the Court is correct, that the Board of Licensure in Medicine — and not the Department of Health and Human Services — is responsible for initiating any effort to revoke or suspend a physician’s license for violating professional standards, Court’s Opinion ¶ 29, then the Licensure Board should be making the decision regarding Doane’s termination of participation in the MaineCare program. The Court discusses the issue of concurrent jurisdiction in section 8008. This discussion is not relevant to a discussion of the scope of section 152(9) because proceedings pursuant .to section 8003 are excepted out of the legislation. The Court’s approach affords a physician less protection before a state agency, than the physician would receive before the Licensure Board, which presumably has more expertise and experience dealing with alleged misconduct of physicians. If the Legislature wants to give any agency, other than the Board of Licen-sure in Medicine, the authority to affect a physician’s license without affording the physician a hearing before the District Court, or if the Legislature wants to give the Licensure Board exclusive jurisdiction over “any matter” affecting a physician’s practice, then it will need to amend the Administrative Procedure Act and section 152(9). This revocation of the right to participate in the MaineCare program affects Doane’s “license,” therefore the Department, of Health and Human Services must proceed in the District Court pursuant to section 152(9).
[¶ 43] For the reasons above, I would affirm the Superior Court’s granting of Doane’s motion for summary judgment.